[Civ. No. 7098. Third Dist. Feb. 23, 1945.]

HARRY CALDWELL et al., Appellants, v. DALARAY MINES, INC. (a Corporation), Respondent.

Chas. L. Gilmore for Appellants.

Homer Lingenfelter for Respondent.

PEEK, J.—This is an appeal by plaintiffs from a judgment in favor of defendant.

Defendant corporation was the owner of certain mining property known as the Gospel Quartz Mine located in Calaveras County, California. On October 20, 1941, D. C. Smith and Ray Hageman, president and vice-president, respectively, of said corporation, granted to plaintiffs the following option:

"San Andreas, October 20-1941.

"We the undersigned hereby give and grant unto Dr. Harry Caldwell and Ben L. Schultz of San Francisco Calif. an exclusive Option for a period from the date hereof until Nov. 1st

Dalaray Mines Inc.

1941 on the Dalaray Mining Co. Property a California Corp. on the following conditions to wit:

"The undersigned agree to give an exclusive title to all the holdings of Dalaray Mines Inc. for a Total Price of One Hundred thousand Dollars ($100,000.00) payments to be made viz: $2000.00 Cash down and a minimum of $300.00 cash per Month, and, or, 10% ten per cent on the Gross Production of all metals all to be applied on the purchase Price of $100,000.00 Net to the undersigned.

"We the undersigned further agree to permit Dr. Harry Caldwell and Ben L. Schultz to get their profit over and above our Net Price. Should Caldwell and Schultz fail to interest parties within the time herein stated or renewals thereof we

are to consider this Contract as Null and void and of no effect. Title to be free and clear of any and all incumbrances.

| | |
|---|---|
| Accepted | Dalaray Mines Inc. |
| Ben L. Schultz | Dalaray Mining Co. |
| Harry Caldwell. | And as Individuals and as directors of |
| Phone | Dalaray Mines Inc. |
| (Hageman Mine) | Dalaray Mining Co. |
| 72 Y 3 | Ray Hageman |
| Meridian 28 | D. C. Smith.'' |

Thereafter follows the acknowledgment by plaintiffs on March 14, 1942.

By a writing dated October 29, 1941, and signed by Ray Hageman only, plaintiffs were granted an extension from November 1st to November 24th. Hageman again granted a similar extension on November 22nd to January 10, 1942. Said extension recited that he acknowledged ''receipt of the payment of Two hundred Dollars which is to be applied on aforesaid Contract-Agreement as a part payment, on the purchase price. . . .'' On January 9, 1942, plaintiffs again were granted a like extension by Hageman until January 24th wherein he acknowledged ''receipt of the payment of Two hundred and fifty dollars (250.00) which is to be applied on within Option-Agreement as an additional payment on the purchase price. . . .''

On January 20, 1942, prior to the expiration date of the last extension, plaintiffs addressed a letter to defendant, stating in part:

''We are now ready and we are prepared to make the final payment . . . and to make the Royalty Payments. Upon showing your Titles to be free and clear of any and all encumbrances . . . and granting us possession of all holdings of aforesaid Corporation as per our agreement and upon which we have paid you $450.00, we will pay the balance due.'' Plaintiffs' second so-called demand letter, dated March 1, 1942, in part, was as follows:

''Please take notice that the undersigned citizens and holders of a certain Option Agreement given to us by you . . . are ready to carry out our part of the agreement, and request of you, for the second time, to get your title in a merchantable shape, as per your agreement in writing to us. . . .

''We are at this time making demand upon you to grant us

possession, and feel that you have had sufficient time to clear your title. . . ."

No answer to either letter was made by defendant, and shortly thereafter it sold the property to a third party. On May 19, 1943, plaintiffs filed their complaint predicated upon the previously mentioned option and alleged that on various dates after January 20, 1942, tender had been made to defendant of the balance of the $2,000 provided for in the option; that defendant refused to accept the tender or to carry out any of the terms of the contract, and prayed for specific performance of the contract or damages for failure of performance. Defendant's answer was in the nature of a general denial of such allegations.

At the conclusion of the trial the court found that the payments of $200 and $250 were made as partial payments on the sum of $2,000 to be paid by plaintiffs to defendant upon exercise of the option; that such payments were so received by defendant and that plaintiffs did not exercise their option nor did they at any time tender the sum of $1,550, being the balance due on the specified sum of $2,000, payable upon the exercise of said option.

■ There can be no disagreement with plaintiffs' first argument which is that a contract, unilateral at its inception, may, through the acts of the parties, ripen into a bilateral contract enforceable in an action for specific performance. It is the acts of the parties, however, which necessarily must determine the applicability of such rule. The writing was plainly an option without consideration by which the defendant offered to sell its mine to plaintiffs upon certain terms and conditions and under which plaintiffs had a right, if exercised within a specified time, to purchase the mine upon compliance with said terms and conditions, one of which was the necessary payment of $2,000. Admittedly only $450 of said sum was paid, which the trial court, as previously mentioned, found to be merely a part payment on account of the $2,000, and that the balance thereof, $1,550, was never paid or tendered by plaintiffs to defendant. Plaintiffs, however, urge that even though the $2,000 was not paid in full, the sum of $450 did pass from them to defendant, and that under such circumstances equity will enforce the contract.

■ The issue herein does not involve a question of part performance of a contract. Plaintiffs merely were given the privilege, for a limited time, of purchasing the mine upon the

performance of certain conditions as set forth in the option, and until there was a compliance therewith, to wit: the payment of $2,000 within the time specified, plaintiffs assumed no obligation under the contract to either buy or pay, and the agreement was not binding upon either party. (*Thomas* v. *Birch* (1918), 178 Cal. 483, 489 [173 P. 1102].)

██ It long has been the law in this state that in order for a plaintiff to maintain an action for specific performance it must be proved that there has been an acceptance of defendant's offer, which acceptance, to be effective, "must be unequivocal and positive and must comply with the terms of the offer." (*Ajax Holding Co.* v. *Heinsbergen* (1944), 64 Cal. App.2d 665, 669 [149 P.2d 189] ; *Briles* v. *Paulson* (1915), 170 Cal. 408, 410 [149 P. 804].) The rule also has been stated thus: "The acceptance must in every respect correspond with the offer, neither falling with nor going beyond the terms proposed, but exactly meeting them at all points, and closing with them just as they are stated. . . ." (6 Cal.Jur. 61; see 17 C.J.S. 378; 12 Am.Jur. 532.)

By virtue of the findings of the trial court that plaintiffs failed to exercise their option, the final contention that defendant is estopped to deny the authority of its officers to execute the contract, becomes immaterial if there was sufficient evidence, and we conclude there was, to support the finding of the trial court that plaintiffs failed to perform the option in accordance with the conditions therein set forth.

The judgment is affirmed.

Adams, P. J., and Thompson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 23, 1945.