[Civ. No. 15168.   First Dist., Div. Two.   Dec. 11, 1952.]

JOSEPH M. SCHREIBER, Respondent, v. G. W. HOOKER, Appellant.

Mazzera, Snyder & DeMartini for Appellant.

Harry Gonick for Respondent.

WAGLER, J. pro tem.—Defendant appeals from an order of the Superior Court of the City and County of San Francisco, denying his motion for a change of venue to San Joaquin County, the county of his residence. The complaint alleges that plaintiff's assignor, the American Bulb Growers of California, Inc., a corporation, at San Francisco entered into an agreement with the defendant by the terms of which defendant was to supervise the harvesting of a crop of lily bulbs growing on land near Crescent City, California, negotiate for the sale of same, and perform other acts on behalf of said corporation. The prayer is for damages for a breach of this contract and for an accounting.

Plaintiff concedes that there is no special contract in writing designating the place of performance, and that under well established principles (*Di Giorgio Fruit Corp.* v. *Zachary*, 60 Cal.App.2d 560 [141 P.2d 8]; *De Campos* v. *State Comp. Ins. Fund*, 75 Cal.App.2d 13 [170 P.2d 60]; *Turner* v. *Simpson*, 91 Cal.App.2d 590 [205 P.2d 243]) the order appealed from can be sustained only if the implied finding of the lower court, that the contract was entered into in the city and county of San Francisco, finds adequate support in the facts set forth in his complaint and the affidavits on file.

The affidavits present different versions of the manner in which the agreement in question was made. Both parties agree that one A. G. Adams, President of the American Bulb Growers of California, Inc., plaintiff's assignor, visited defendant at Lodi, San Joaquin County, California, on or about September 10, 1949, and discussed the subject matter of the contract and its terms. Defendant in his affidavit alleges "that on or about the 10th day of September, 1949, one A. G. Adams, President of said American Bulb Growers of Cali-

fornia, Inc., a corporation, did personally visit your affiant in the City of Lodi, County of San Joaquin, State of California; . . . that the said American Bulb Growers of California, Inc., by and through its said President, A. G. Adams, and your affiant did then and there orally agree upon the terms and conditions under which your affiant would advance moneys for harvesting said crop of bulbs, and would supervise the harvest thereof. . . .'' Defendant further alleges that one of the conditions of said oral agreement was ''that said American Bulb Growers of California, Inc., would give your affiant authority in writing to do all things necessary to carry out said oral agreement; that thereafter, and on or about the 23d day of September, 1949, your affiant received in the mail a resolution of the Board of Directors of said American Bulb Growers of California, Inc., giving him certain authority to proceed with the harvest . . .; that said authority was not in conformance with the oral agreement which affiant and the said American Bulb Growers of California, Inc., had made in the City of Lodi, . . .'' that affiant ''did object to said resolution'' and that ''on or about the 30th day of September, 1949, your affiant received in the mail a second resolution of the Board of Directors of the said American Bulb Growers of California, Inc., which said resolution was the same as the copy attached to Plaintiff's Complaint . . .; that said resolution contained authority for affiant to proceed substantially as orally agreed, and in addition thereto authorized him to advance moneys necessary to defend any suits filed against American Bulb Growers of California, Inc., by Byron Cossins or others, and agreed that any such sums so advanced should be repaid by said corporation out of funds received from the sale of said bulbs; . . . your affiant did advance certain sums, and did go to Crescent City, Del Norte County, California, and proceed there to carry out his obligation under said oral agreement.''

Plaintiff in the complaint and in his counteraffidavit has taken the position that the contract was made in the city and county of San Francisco, that it was the outgrowth of a written offer contained in a letter written by defendant dated September 25, 1949, addressed to A. G. Adams, president of plaintiff's assignor, at its principal place of business in San Francisco, and an acceptance contained in a resolution of the American Bulb Growers of California, Inc., addressed to the defendant at Lodi, California, and deposited in the mail in San

Francisco on September 29, 1949. (See 6 Cal.Jur., p. 47; *Fitz-hugh* v. *University Realty Co.*, 46 Cal.App. 198 [188 P. 1023].)

Defendant's letter, as set forth in the counteraffidavit, reads as follows:

"*These are my terms, take them or leave them as you choose*: the company give me authority to clear up Ernest's legal matters so that we can go ahead with the harvest, also authority to pay out what is necessary to clear up the company's indebtedness to Ernest, also to finance the harvest and replanting of the bulbs. Further: the company gives me authority to sell the bulbs (I have a buyer waiting) and after deducting the expenses incurred in the company's obligation to Ernest, in the expenses connected with the harvesting and replanting and sale of the bulbs (an accounting to be made to the company) the rest of the proceeds shall be turned over to Mr. Ellis for disbursal as per agreement of *Sept. 10th*. If you wish me to do what I can for the benefit of the company, send a resolution containing these terms at once so I can get back up there and straighten out this legal tangle and get on with the harvesting.

"I feel sure Mr. Ellis will agree with me in this position and will you let him read this letter. Of course to be included in the terms is the 500 dollar bonus for the use of my money in the transactions necessary.

"Please consider this and mail the resolution immediately. If you don't care to accept these terms then there is no other alternative than let a receiver be appointed, with the dissolution of the company. I shall do the best I can for the benefit of all concerned." (Emphasis ours.)

The resolution of acceptance, a copy of which was attached to the complaint and incorporated in the counteraffidavit, reads as follows:

"BE IT RESOLVED, that G. W. Hooker be, and he hereby is, appointed agent for this corporation with full authority covering the following matters:

"1. To take such steps as may be necessary to effect a settlement of the Ernest labor claim.

"2. To harvest the crop of bulbs on the property of this corporation with full authority to advance such monies as may be necessary, and to disburse the same as required in connection with the payment of the bills for the harvesting of said crop.

"3. To negotiate for the sale of and/or sale of said bulbs when harvested, and after deducting all costs of said harvesting

and payment of the obligation due Ernest, setting aside the necessary money for the replanting of such bulbs as may be necessary to replant and deemed advisable by him, to turn over all the balance of said proceeds to Howard C. Ellis, the attorney for said company, for disbursal as per agreement dated *June 22, 1949.*

"4. To pay G. W. Hooker as consideration for the foregoing, in addition to repaying him any and all sums of money advanced by him in connection with carrying out the above, an additional sum of $500 which he is hereby expressly authorized to deduct from any and all proceeds prior to turning them over to Howard C. Ellis; said G. W. Hooker to render an accounting of all monies advanced and of monies disbursed in connection with any of the foregoing to the time of the delivery of any balance of proceeds to Howard C. Ellis.

"5. To take any and all other steps as may be deemed necessary by him for the purpose of carrying out the foregoing authorization and for the best interests of said corporation.

"6. To advance such sums as may be necessary in addition to the above on behalf of said corporation to resist any suits filed against said corporation by Byron Cossins or others; any such sums so advanced to be repaid by said corporation out of funds received from the sale of said bulbs." (Emphasis ours.)

The statement by defendant in his letter of September 25, 1949, *"These are my terms, take them or leave them as you choose,"* shows conclusively, we believe, that up to that time at least there had been no definite meeting of the minds. The defendant apparently recognizes the weakness of his original position in this regard, for in his opening brief he has abandoned his contention that an oral agreement was entered into on September 10, 1949, as alleged in his affidavit. He has accepted in part plaintiff's version of the manner in which the contract was made, in that he concedes that his letter was an offer, and that the resolution was a partial acceptance, but, argues the defendant, the acceptance was not an unqualified one; it did not meet the offer squarely, and there was, therefore, no contract until the resolution was received by him and acted upon. (*Fitzhugh* v. *University Realty Co., supra.*)

Defendant points out two particulars in which he says the acceptance did not meet the offer. The offer provided that "the proceeds shall be turned over to Mr. Ellis for disbursal as per agreement of *September 10th;*" while the acceptance provided that the proceeds shall be turned over to Mr. Ellis

"for disbursal as per agreement dated *June 22, 1949.*" Since no point is made of this discrepancy in defendant's affidavit, we might infer that it was but a typographical error. In fact, defendant in his affidavit negatives the idea that this was a material point, for his affidavit recites that said resolution (referring to the resolution of September 29) contained authority to proceed "substantially as agreed." If there were in fact two agreements bearing different dates under which Mr. Ellis was to disburse moneys, the burden was upon the defendant as the moving party to show that the terms differed. (*Union Oil Co.* v. *Basalt Rock Co., Inc.,* 30 Cal.App.2d 317 [86 P.2d 139].) This he failed to do.

It is true that an acceptance to be effective must in every respect comply with the terms of the offer. (*Ajax Holding Co.* v. *Heinsbergen,* 64 Cal.App.2d 665 [149 P.2d 189]; *Caldwell* v. *Dalaray Mines, Inc.,* 68 Cal.App.2d 180 [156 P.2d 52]; *Briles* v. *Paulson,* 170 Cal. 408 [149 P. 804].) It is not essential, however, that the identical language be repeated. (*Beatty* v. *Oakland Sheet Metal Supply Co.,* 111 Cal.App.2d 53 [244 P.2d 25].)

The second discrepancy between the offer and the acceptance relied upon by the defendant appears in paragraph six of the resolution. This paragraph authorizes the defendant to advance whatever sums might be necessary to resist any suits filed against the corporation by one Byron Cossins or others. Since the Byron Cossins' claim was not mentioned in defendant's letter, he argues that this placed upon him an additional responsibility. In his affidavit, however, defendant took a different view. There he stated: "that said authorization was in excess of that required by said oral agreement, but since your affiant had never agreed to advance any such sums, he felt that he would not be obliged to do so." We believe that the view taken by the defendant in his affidavit is sound. The resolution did not obligate him to advance any money or to defend any suits, but gave him the authority to do so should the occasion arise, and should he wish to do so.

The defendant in his letter set forth his terms and asked for authority to proceed. The resolution met his terms squarely. It also gave him without qualification all of the authority requested.

The trial court impliedly found that the additional authority contained in the resolution did not prevent the contract from becoming effective upon its deposit in the mail, and that the contract was accordingly made in the City and County of

San Francisco. ▓▓▓ On an appeal from an order based on conflicting affidavits, it must be presumed that the court found the facts more favorable to the prevailing party. Not only must all conflicts in the affidavits be resolved in favor of the lower court's order, but where there is room for conflicting inferences, the inferences most favorable to the order must be drawn. (*Grangers' Union* v. *Ashe*, 12 Cal.App. 143 [106 P. 889]; *Bernou* v. *Bernou*, 15 Cal.App. 341 [114 P. 1000]; *Smilie* v. *Smilie*, 24 Cal.App. 420 [141 P. 829]; *Argue* v. *Wilson*, 3 Cal.App.2d 645 [40 P.2d 297]; *Miller* v. *Collins*, 8 Cal.App.2d 10 [47 P.2d 334]; *Millard* v. *Millard*, 102 Cal. App.2d 249 [227 P.2d 477]; *Doak* v. *Bruson*, 152 Cal. 17 [91 P. 1001]; *Gordon* v. *Perkins*, 203 Cal. 183 [263 P. 231].)

▓▓▓ Applying the foregoing rule to the evidence in this case, we must conclude that the finding of the trial court finds ample support in the verified complaint and the affidavits on file.

The order appealed from is affirmed.

Nourse, P. J., and Dooling, J., concurred.