[Civ. No. 20181. Second Dist., Div. Two. Oct. 1, 1954.*]

E. L. RUSSELL, Appellant, v. HARRY LANDAU, Respondent.

*Filed *nunc pro tunc* as of Sept. 22, 1954.

Leonard J. Meyberg and Coit I. Hughes for Appellant.

Brady, Nossaman & Paulston, Walter L. Nossaman and Joseph L. Wyatt, Jr., for Respondent.

MOORE, P. J.—From the order quashing service of summons on the ground that defendant was a nonresident temporarily in California as a party litigant and as a witness to testify in judicial proceedings, plaintiff appeals. Appellant contends that under the circumstances, the rule of immunity against service of process cannot be fairly invoked by respondent. This claim necessitates a review of the background of the controversy.

## The Parties

Appellant is a daughter of Morris Marks Landau, the deceased brother of respondent. In December, 1941, in the Union of South Africa, Morris created an inter vivos trust with respondent and one Abe Schwartz as trustees. At the time Morris departed this life in November, 1949, the beneficiaries of the M. M. Landau Trust were appellant, her three brothers* and three children of one of the brothers. All reside in London except appellant whose home is in California. The assets of the M. M. Landau Trust consist primarily of stocks and bonds of corporations of Rhodesia and the Union of South Africa. By his last will, Morris established other trusts, the trustees of which are Samuel Zagon and Leslie Landau, executors of Morris' will, but they administer only that part of decedent's estate in the United States, while respondent administers that part of the estate in the Union of South Africa and in Rhodesia.

## Genesis of Controversy

After Morris' decease, respondent purchased from appellant's three brothers their interest in the assets of the M. M. Landau Trust which included half of appellant's share theretofore sold to her brothers. Included among her conveyances to her brothers were shares of Morland Corporation, a South African concern. Appellant's alleged controversy had its genesis in disputes arising out of respondent's alleged treatment of such shares. After the superior court had forbidden the executors of Morris' estate to prosecute an action in Rhodesia to establish an interest in the Morland shares, appellant, pursuant to repeated effort, induced respondent to purchase her distributive share of the Morris M. Landau Trust. Prior to such transaction, respondent hesitated to visit California for fear that appellant would subject him to litigation, but the purchase having been effected, he determined to come to America to attend to "certain personal business matters." Soon after such decision, however, he was advised that the executors of the estate and the trustees of the M. M. Landau Trust were about to initiate further proceedings with reference to the Morland shares, whereupon respondent resolved to visit Los Angeles in order to appear in such proceeding and testify.

## Respondent Served With Summons

Immediately upon his arrival in Los Angeles, October 11, 1952, respondent retained counsel for advice as to the probate

---

*Harry, Cecil, and Leslie Landau.

proceedings whereby the executors and trustees asked for instructions. Except the time consumed by heart attacks, respondent devoted the entire period of his sojourn to consultations with his counsel and other parties interested with him and also in appearing as a witness under subpoena in a proceeding whereby appellant sought to perpetuate his testimony in any action by the executors against her for conversion by reason of her sale to respondent of her share of the assets of the M. M. Landau Trust. Promptly upon his signing his deposition which had detained him 42 days, he was served with summons in the instant action. He thereupon departed the state, December 12, 1952.

### SERVICE QUASHED

Following the trial of the motion to quash the service of summons, the court ordered that the "said motion is granted." While the ruling upon a motion is deemed to have been based upon the facts averred by the prevailing party and proved by his witnesses, the "Memorandum Ruling" filed by the judge, not containing any statement contrary to the evidence submitted by respondent, is hereby referred to as the findings of the court. By such ruling the court determined that:

### THE FINDINGS

1. Respondent was the ancillary executor of his brother's will in England, in the Union of South Africa and in Rhodesia;

2. Respondent arrived in California eight days after the executors of the M. M. Landau Estate had filed a petition for instructions, which required some response from Harry Landau;

3. Respondent was interested in the estate, both as legatee and as ancillary executor in England, in Rhodesia and in South Africa where he resides;

4. The hearing on the petition for instructions was continued from time to time owing to respondent's heart attacks;

5. He was subpoenaed by the executors as a witness and testified on November 18 and December 4;

6. Meanwhile, appellant had filed a proceeding to perpetuate respondent's testimony and caused a subpoena to be served upon him to appear before a notary to give his deposition. He appeared accordingly and was detained at such task until December 12 when at his apartment he signed the transcript.

7. Thereupon appellant's agent served respondent with the summons here in question.

Upon such findings the court decided:

1. Respondent came into California for the sole and controlling purpose of appearing as a party and of testifying in the probate proceeding and

2. His actions disclosed no other purpose;

3. He was not the moving party in the probate proceeding;

4. Such proceeding was not so correlated with the action alleged in appellants' complaint as to justify the application of the exception to the general rule. ■ Such rule is that "during a period reasonably necessary to the giving of testimony in a judicial proceeding, a nonresident witness who enters a state primarily for that purpose is immune from service of summons. ■ The rule is based upon public policy and, even though in derogation of the rights of the individual litigant, is justified by the public interest served by the granting of immunity." (*Velkov* v. *Superior Court*, 40 Cal.2d 289, 291 [253 P.2d 25, 35 A.L.R.2d 1348].)

### THE GENERAL RULE APPLIED

The wisdom of the rule is demonstrated by the very facts of the instant action: respondent, an infirm and aging person residing in a distant land, feared to visit California as a party litigant and to give his testimony which was necessary to a proper decision on the issues of the pending proceeding, but for which he would not have come. Two continuances of the trial were granted because he was too ill to attend. He did nothing to extend his sojourn but began his conferences upon arrival and departed as soon as he had finished, except for his detention to testify in appellant's special proceeding to perpetuate his testimony. From the facts of his prompt attention to the probate proceeding, his participation therein and his attention to no private business matter, contrary to his former practice, it was a fair inference that he did not come to California for any purpose other than to participate in a judicial proceeding.

■ Upon the trial court's finding and upon the reasonableness thereof, in the light of the adopted evidence, the privilege of immunity against service on respondent was justifiably ordered. Since his testimony was needed, it was fair and proper and in the interest of public policy that he be shielded from harassment by lawsuits while in attendance upon judicial business. (*Velkov* v. *Superior Court, supra*, p. 292; *Gerard* v. *Superior Court*, 91 Cal.App.2d 549, 552 [205 P.2d 109]; *Hammons* v. *Superior Court*, 63 Cal.App. 700, 707 [219 P. 1037].) ■ The proper test is whether

the privilege will promote justice. (*United States* v. *Conley*, 80 F.Supp. 700, 701.) ■ Whether the nonresident comes too soon or remains too long depends upon all the circumstances of his coming, and the reasonableness of the period of his visit must be determined by the court. (*Gerard* v. *Superior Court, supra.*) ■ In considering the facts with reference to the duration of the sojourn, the court must regard the condition of the nonresident's health as a factor in causing his detention. ■ A litigant is entitled to a reasonable time for conferences with his counsel prior to trial, the time for the hearing, and a reasonable time for departure. (*Ibid.*, 552.) Although a witness was delayed four days after close of the trial, he was immune against service of process. (*Hammons* v. *Superior Court, supra.*) ■ The stay of the nonresident for over six months is not unreasonably long where he suffered from illness at the place of trial. (*Grundy* v. *Reflor*, 312 Mich. 428 [20 N.W.2d 262, 264].) Judge Hanson took his statement of the rule from the United States Supreme Court in *Stewart* v. *Ramsay*, 242 U.S. 128 [37 S.Ct. 44, 61 L.Ed. 192, 197]. It appears that Ramsay, a resident of Colorado, sued one Anderson in Illinois where the latter was a resident. Not only was Ramsay plaintiff, but he was also a witness against Anderson. After he had testified and left the courthouse, he was served with process in a new action filed by Stewart. Thereupon, Ramsay moved to quash the service, averring the service but omitting to allege that he had gone from Colorado to Illinois solely to serve his cause or that his "main and controlling purpose" was to attend the trial of his suit against the defendant. After Stewart's demurrer to Ramsay's plea in abatement had been overruled, in a proceeding brought on by a writ of error the ruling was sustained. However, the opinion by Mr. Justice Pitney declares the general rule in emphatic language: "The true rule, well founded in reason and sustained by the greater weight of authority, is that suitors, as well as witnesses, coming from another state or jurisdiction, are exempt from the service of civil process while in attendance upon court, and during a reasonable time in coming and going."

It is observed that the high court considered Ramsay's "main and controlling" purpose as material. By reason of such language, Judge Hanson observed with reference to the instant matter: "It is plain upon the facts that the defendant entered into the State of California to appear as a witness, and indeed as a party, if necessary . . . It was his sole and con-

trolling purpose.'' ▮ But the question whether respondent's purpose at the time of coming into the state or at the time he was served with summons was to participate in a judicial proceeding, is not material for the reason that from the facts found, it is clear that at all times while in the state he was either ill or was occupied in attending to the probate proceeding or in giving his testimony in appellant's special proceeding. When he entered the state, he did so both as a prospective party and as a witness and was then immune. (*Slosberg* v. *Municipal Court,* 101 Cal.App.2d 238, 240 [225 P.2d 312]; *Gerard* v. *Superior Court, supra,* 552; *Franklin* v. *Superior Court,* 98 Cal.App.2d 292, 294 [220 P.2d 8].) At the time of service of process he was still engaged in attending to and testifying in the proceedings and was therefore exempt from service. (*Fox* v. *Hale & Norcross Silver Min. Co.,* 108 Cal. 369, 424 [41 P. 308]; *Horn* v. *Superior Court,* 94 Cal. App.2d 283, 285 [210 P.2d 518]; *Hammons* v. *Superior Court, supra,* 707.) This very court, 24 years ago, laid down the broad rule ''that a nonresident, appearing before the courts of any state merely as a witness, may not be subjected to service of process in a civil action while in attendance only for that purpose. (*Von Kesler* v. *Superior Court,* 109 Cal. App. 89, 90 [292 P. 544].)

▮ From such decisions it is now the universal rule that a nonresident witness while in attendance upon a trial in an alien state to give evidence enjoys immunity against service of civil process. (See also *Hollidge* v. *Crumpler,* 72 F.2d 381, 382 [63 App.D.C. 330]; *Harvey* v. *Harvey,* 199 Wis. 212 [225 N.W. 703].) No rule of practice is more firmly rooted in the jurisprudence of the United States. (*Hale* v. *Wharton,* 73 F. 739, 740.) Such privilege is extended to suitors and witnesses to secure to them the right to give testimony and other assistance in the trial of an action. (*Roschynialski* v. *Hale,* 201 F. 1017, 1018.)

### An Exception to the Rule Urged by Appellant

▮ An exception to the rule of immunity is that the nonresident is not exempt if the suit brought against him involves matters affecting the ''same correlated subject matter and the action is brought in good faith and calls for the adjudication of substantial rights.'' (*Von Kesler* v. *Superior Court, supra.*) ▮ That the subject of appellant's action is not akin to the matters pleaded in the petition for instructions is readily demonstrable. By the former, she sued for

an accounting, accused respondent of disloyalty and faithlessness in the performance of his duty as a trustee in her particular trust. The petition for instructions to an executor has to do only with the administration of decedent's estate. There is no close interrelation of the two pleadings. Neither was respondent the moving party in the petition. On such issues the court considered the evidence submitted, to wit, respondent's two affidavits; the transcript of probate proceedings; the testimony of witnesses; the correspondence to which reference is made, and the records in the probate proceeding. The finding is final. The rule that a finding on contradictory evidence is final is not relaxed or otherwise changed by reason of the fact that the findings are based upon ex parte affidavits or other documents. (*Goes* v. *Perry,* 18 Cal.2d 373, 378 [115 P.2d 441]; *Warren* v. *Warren,* 120 Cal.App.2d 396, 400 [261 P.2d 309].) That there was no correlation of the two pleadings is established by the petition to the probate court for instructions and the complaint herein.

THE PETITION OF THE EXECUTORS AND TRUSTEES

The petition of the executors and trustees recites substantially that: (1) they are trustees of decedent's three testamentary trusts; Eunice is beneficiary of trust No. 1; (2) in April, 1952, the court instructed petitioners not to institute any legal action in the Union of South Africa or elsewhere to assert any claim to a share of capital stock of Morland Corporation; (3) pursuant to our petition the court gave oral instructions with respect to the Morland shares; (4) the written orders, prepared pursuant to such instructions, have not been entered; (5) the trust created by decedent in South Africa for the benefit of Eunice gives her 13/55 interest; (6) at the time of decedent's passing, the ordinary shares of Morland Corporation Ltd. were held by the Morris M. Landau Trust; (7) all the voting power in Morland Corporation was issued to Harry Landau, Herbert Landau and Abe Schwartz; (8) Eunice was entitled to receive 280 shares of Morland Corporation out of the assets of the Morris M. Landau Trust; (9) in November, 1949, Eunice transferred to her brothers, Cecil and Harry, one half of her distributive share of Morris Landau Trust; (10) in January, 1950, the three brothers conveyed one half their distributive share of Eunice to Harry Landau Trust and such share included 600 shares of Morland Corporation, and a dispute arose between vendors and purchaser thereof with respect to valuation of the 600 shares; but they agreed to a reappraisement by their chosen accountants;

(11) as a result of the reevaluation of such shares, the distributive share assigned by Eunice to her brothers exceeded 23,000 pounds, the valuation they had fixed upon the shares; (12) such excess of 6,000 pounds was paid to Eunice; (13) thereafter in July, 1952, the trustees of Morris Landau Trust distributed to Eunice her share of the trust, including 140 Morland shares which she sold to the Harry Landau Trust and "received a substantial sum in payment thereof"; (14) Eunice Russell contends that the proceedings in behalf of the coexecutors or trustees are not to employ counsel in South Africa, but to take action elsewhere; (15) Mrs. Russell's attorney raises some question as to whether the executors have made a full disclosure of all evidence available on the subject of the Morland shares, asserting the executors have not been given opportunity formally to lay all evidence pertaining to the evidence of the Morland shares; (16) Mrs. Russell's counsel asserts that (a) in giving prior instructions, the court intended to limit petitioners' right to bring an action in South Africa but did not intend to limit your petitioners against asserting a claim elsewhere; (b) the court intended that the executors are not required to initiate any litigation in South Africa where there is a domiciliary executor or to spend estate funds there; (c) it is your duty to follow the advice of the court; (17) a claim based on facts here alleged is made against the estate by Aquadau Equities Ltd.; (18) in December, 1936, decedent organized Aquadau Equities Ltd. and sold to it certain mining shares and other securities worth 19,900 pounds and subscribed for 498 shares for which he paid 20,000 pounds which was used to pay decedent the 19,900 pounds. He soon assigned the 498 shares to Morland Corporation, organized under the laws of Panama, all of whose stock decedent owned, but Morland issued its debentures to decedent in exchange for the 498 shares; (19) in January, 1937, Aquadau contracted to make weekly payments of 34 pounds, 12 shillings, 8 pence to Rose Bertha Landau, divorced wife of decedent, which sums were paid until his death in the total amount of 18,895 pounds, 17 shillings, 15 pence; also, Aquadau paid Inland Revenue as income tax on such sum 10,395 pounds, 12 shillings, or a total of 29,251 pounds, 9 shillings, 5 pence paid by Aquadau under said contract; (20) some time after January 14, 1937, the income from the mining shares, etc., transferred to Aquadau became insufficient to make all the payments it had agreed to make to Rose Bertha; so, decedent from time to time advanced funds to Aquadau for that purpose in the

aggregate sum of 8,789 pounds, 17 shillings, 10 pence to decedent's death; (21) in addition to the sums advanced to Aquadau by decedent, Morland, upon decedent's request, advanced to Aquadau 10,951 pounds, 6 shillings, 6 pence which it paid to Rose Bertha; (22) the books of account of Aquadau from March, 1938, to November 4, 1939, carry two accounts with decedent: (a) an account of sums received from decedent to be used for paying Rose Bertha. ''The payments made to Rose Bertha were not debited to this account''; (b) a current account of moneys ''owing to decedent by Rose Bertha which Aquadau was authorized to collect by deducting portions of the amounts payable to Rose Bertha. The loan account shows 15,042 pounds due decedent; the current account shows 2,613 pounds, 17 shillings, 10 pence, or a total of 17,655 pounds, 17 shillings, 10 pence. By reason of an error in the loan account in favor of decedent, the total credit should be only 8,789 pounds, 10 shillings; (23) Aquadau is insolvent and in process of liquidation, and its liquidator now asserts a claim for all moneys paid to Rose Bertha prior to decedent's death less advances made by decedent, a total of 20,461 pounds, 11 shillings, 7 pence; (24) executors and trustees opine it was never intended for decedent to reimburse Aquadau for moneys it paid to Rose Bertha, but that decedent was always considered by all parties to be owner of Morland shares and Morland Corporation which owned all the stock of Aquadau, and decedent as such owner discharged his obligations to Rose Bertha through Morland. Should it be found that decedent did not own Morland shares, the estate might become liable to Aquadau for payments made to Rose Bertha, except to the extent barred; (25) on receipt of this court's order instructing the executors about the Morland shares, the executor in South Africa submitted all available evidence pertaining to the ownership of Morland shares to advocate Arthur Suzman, Q.C., who rendered an opinion; (26) it appears from the correspondence of Mrs. Russell's lawyer that she has changed her position with respect to Morland shares and that doubt exists as to the desires of the beneficiaries of Trusts 1, 2 and 3, respectively; either as executors or as trustees of Trusts 1, 2 and 3, petitioners should take some action. Demand has been made upon petitioners by the minor children of Leslie Landau to contest the claim of Aquadau.

Wherefore, petitioners pray for: Instructions (1) to employ counsel in South Africa to sue for declaratory relief against all persons claiming an interest in any shares in

Morland and for a declaration of the rights and interests of the estate in Morland shares; (2) to employ counsel in South Africa to sue Harry Landau as trustee with respect to 25,000 pounds of Morland debentures for the benefit of Vivian Sarah Landau to determine the rights of the estate to the said 25,000 pounds of debentures; (3) to contest the claim of Aquadau against the estate in England, or South Africa; (4) to employ counsel in the Union of South Africa to object to the accounts to be filed by the executor there if they show: (a) that neither ordinary nor class "A" shares in Morland are assets of the estate; (b) that 25,000 pounds of Morland debentures donated by decedent in trust for his daughter Vivian are not assets of the estate; (c) that to the extent the claim of Aquadau is not satisfied out of the English estate, it is admitted as a claim against the South African estate; (d) that the 25,000 pounds of Morland debentures donated by decedent in trust for his children of his first marriage are not assets of the estate; (5) to employ counsel to institute an action against Eunice Landau Russell for conversion of 277 shares of Morland Corporation distributed to her by the trustees of the Morris Marks Landau Trust and in turn sold by her and to recover the consideration received by Eunice for such shares; (6) to employ counsel to sue all persons claiming an interest in the Morland shares; (7) or alternately to disclaim interest in such shares and to proceed with the settlement of the tax problems confronting the estate on the basis that decedent transferred said shares to Harry Landau as gifts with full and adequate consideration.

### Significance of the Petition

The foregoing digest of the petition discloses the wide divergence of the two pleadings. The petition asked the court to determine the present ownership of the Morland shares and debentures and the extent of the estate's interest in them, if any, and also the status of the claim of Aquadau Equities Ltd. against the estate.* The court determined the status of the ownership of the Morland shares, its debentures and securities. It found how they had gone into and out of the Morris Landau Trust, but did not examine into the accounts of that trust. Also, it determined that the transaction which gave rise to the alleged Aquadau claim is independent of the

*That claim is against the African estate. Respondent could not be sued upon it in California.

administration of the trust which is the subject of appellant's action.

## THE COMPLAINT HEREIN

The suit of appellant is against the trustees of an *inter vivos* trust for an accounting for money. It accuses respondent of commingling assets, borrowing from the trust and disloyalty. The petition in probate was filed for the purpose of obtaining a determination of the estate's interest in the Morland shares and securities and did not concern itself with respondent's fiduciary duties. Appellant's action, on the other hand, is a direct challenge of respondent's performance of his fiduciary duties as to all the assets of the trust. Should she prevail, she would not thereby recover a single item of the property described in the petition of the executors. Moreover, while the probate court instructed the executors how to challenge the Aquadau claim, the instant action seeks nothing with respect thereto.*

## NO SUBSTANTIAL CORRELATION

To establish a correlation of the probate proceeding with appellant's action, it is necessary to show a substantial connection between the two. If such relation be not proved, the exception to the general rule of immunity does not apply. Two cases will illustrate the point. In *Velkov* v. *Superior Court*, 40 Cal.2d 289 [253 P.2d 25, 35 A.L.R.2d 1348], Mrs. Velkov had come from New York to testify in a disciplinary proceeding she had initiated against her attorneys. While here, she was sued by her former lawyers for declaratory relief and they alleged the same subject matters which she had alleged in her complaint against her attorneys. By reason thereof, she was denied a writ to prevent the trial of the action instituted by those attorneys. Her case was an exception to the general rule of immunity, and service of process

---

*Her complaint is a voluminous recital of evidentiary matters concerning the several trust instruments of her father, their contents, her interests in each; the duties of the trustees, how respondent had dealt falsely with his obligations as trustee; that "about April 1940 defendant had acquired for the account of Morland Panama . . . all of the Ordinary shares of Aquadau Equities Ltd. . . . that Harry Landau caused the said Morland Panama to write off the full value of the said Aquadau Equities Ltd. shares and reduce same on its books to nil."

Her prayer is: (1) for $100,000 damages; (2) for an account for all transactions with the assets of Morris Landau Trust, the Morland Panama or Morland South Africa corporations; (3) for judgment against defendant for the amount shown due as a result of such accounting; (4) for punitive damages in the amount of $100,000; and (5) for costs of suit.

on her was lawful. In *Jett* v. *Jett*, 155 Tenn. 473 [295 S.W. 65], service on the nonresident was not lawful. The parties had resided in Knox County where they separated, after which she moved to Shelby County and filed for divorce. The husband moved to quash the service of summons on the ground that he was served in the Shelby County Court House where he was for the sole and only purpose of prosecuting, and testifying in a habeas corpus proceeding against Father O'Neal to regain custody of the two children named in the wife's complaint. "Neither the issues nor the subject matter" in the habeas corpus proceeding were the same as those involved in the suit for divorce. Therefore, the plea in abatement was properly sustained.

### ANOTHER EXCEPTION NOT APPLICABLE

 The rule of immunity does not apply where the nonresident's main and controlling business in the place where he is served is other than to attend to judicial proceedings. (See *Day* v. *Harris*, 14 N.Y.Supp. 3, 4; 49 Mich.L.Rev. 907, 909; *Stewart* v. *Ramsay*, 242 U.S. 128 [37 S.Ct. 44, 61 L.Ed. 192, 197].) As shown above, the court found that respondent's main and controlling business in California was to assist in the proceedings with reference to the petition of the executors and trustees. The record supports such finding in that the evidence adopted shows that he had no business in this state other than to serve the court.

### FINDINGS ARE FINAL

Appellant evidently proceeds upon the assumption that the trial court's determination of the facts is still open to review. Such is not the law. Even though Judge Hanson had written no "memorandum ruling"—the findings are implied. When the ruling on any motion supported by affidavits is appealed from, the averments favoring the ultimate fact found are deemed to be true. All contrary averments will be disregarded by the reviewing court. Even where findings are based upon inferences only, the inferences most favorable to the order are to be considered. (*Gordon* v. *Perkins*, 203 Cal. 183, 186 [263 P. 231]; *Doak* v. *Bruson*, 152 Cal. 17, 18 [91 P. 1001]; *Schreiber* v. *Hooker*, 114 Cal. App.2d 634, 640 [251 P.2d 55]; *Warren* v. *Warren*, 120 Cal.2d 396, 400 [261 P.2d 309]; *Estate of Standing*, 99 Cal. App.2d 668, 673 [222 P.2d 465, 223 P.2d 255].) If there is any conflict in the affidavits, those in favor of the

prevailing party must be taken as true and the facts recited therein must be deemed established. (*Doak* v. *Bruson, supra.*)

Notwithstanding the rule and the authorities cited, appellant argues at length the evidence she introduced to show that respondent's purpose in coming to California was to serve his selfish interests and not to participate in the probate proceedings as party or witness. She specifies (1) his letters of June 17, 1952, asking L. G. Landau to make arrangements for an apartment in a local hotel and of August 27, detailing his itinerary; (2) his answer in the probate proceeding, requesting the court to instruct the executors that the estate has no interest in any outstanding shares of the Morland Corporation. ▮ In the first place, the finding supported by proof is final, and a retrial thereof is not permissible. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].) But appellant contends that another exception to the rule of immunity applies, namely, the correlation of the instant action with the matters pleaded in the petition for instructions.

### RESPONDENT DID NOT INITIATE THE LITIGATION

▮ Another feature of the decisions wherein the exception to the immunity rule was invoked is that the nonresident was the very party who initiated the first action. Of course, where a nonresident travels into California and sues a resident of this state, it is unthinkable that the resident should be forbidden to litigate by appropriate pleading all issues created by his adversary. (*Von Kesler* v. *Superior Court,* 109 Cal.App. 89, 91 [292 P. 544]; *Mullen* v. *Sanborn,* 79 Md. 364 [29 A. 522, 523, 25 L.R.A. 721, 47 Am.St.Rep. 421]; *Tiedemann* v. *Tiedemann,* 35 Nev. 259 [129 P. 313, 314].)

Respondent was found not to have instigated the probate proceedings. Such finding based upon substantial evidence is final and conclusive.

### No GENERAL APPEARANCE BY RESPONDENT

▮ Appellant contends that respondent made a general appearance. She does not assert that the Notice of Motion to Quash Service of Summons is deficient as special appearance. It alleges that "Harry Landau, appearing specially for the purpose of giving this notice of motion and making the motion hereinafter set forth, and for no other purpose." In his supplemental notice of motion to quash, respondent repeated the same declaration that he was appearing specially for the purpose of moving to quash the service of summons. But appellant erroneously conceives that a general appear-

ance was effected because respondent at the time of presenting his motion stated: "counsel and I have an agreement that if this motion should be finally denied . . . in the event either that the motion is granted or is denied or that denial has become final, if that event occurs, that the defendant will have ten days to plead to the complaint." After the court's statement that he "will make that order then, ten days," respondent's counsel stated: "and it will be understood, of course, that the order applies after this matter is finally disposed of . . . is that your understanding, Mr. Meyberg?

"MR. MEYBERG: Yes."

Appellant contends that if, pending a motion to quash, an application for time extension is made, such application "in this sequence is a general appearance." She cites *Payne* v. *Pullan*, 44 Cal.App. 728 [187 P. 127], as authority for her thesis. The cited decision is not authority. In that case the defendant, specially appearing to make the motion, moved to quash. Later, he requested an extension of two days in the event his motion should be denied. In the action at bar, a stipulation had been made by the parties that respondent might have ten days to plead after his motion should be finally decided. After his counsel had said, "I wish at this time to make the motion," he called the court's attention to his agreement with appellant's counsel and the court thereupon made the order: "Ten days." After respondent's counsel had repeated the understanding, appellant's attorney confirmed it.

It is the law that where a request for time to plead is made contemporaneously with the motion to quash, such request is not the equivalent of a general appearance. (Note, 81 A.L.R., p. 170.) In *Powers* v. *Braly*, 75 Cal. 237 [17 P. 197], a lawyer made a "special appearance" to move to strike the amended complaint and dismiss the action. On the same day he applied to the court for an extension of time for defendants to move and plead until it was determined which complaint he should plead to. It was held that his asking the court for an extension of time to move or plead until the motion was disposed of was an act ancillary to the motion. The court emphasized that the Code of Civil Procedure, section 1014, states the law: "*A defendant appears* in an action *when he* answers, demurs, or *gives the plaintiff written notice of his appearance or when an attorney gives notice of appearance for him.*"

In *Davenport* v. *Superior Court*, 183 Cal. 506 [191 P. 911], citing section 1014, *supra*, it was held that the order given

by the judge to a defendant, extending the time within which the latter might plead to the complaint, did not have the effect of a general appearance in the action; a "written notice of appearance" mentioned in the code section "is a document to be drawn up especially for that purpose."

The order is affirmed.

McComb, J., and Fox, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 17, 1954.